**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MONOLITHIC 3D™ INC., | § § § | Case No. |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| SK HYNIX INC., | § § § | |
| Defendant. | § § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MonolithIC 3D™ Inc. ("MonolithIC 3D" or "Plaintiff"), by and through its attorneys, files its Complaint against Defendant SK hynix Inc. (hereinafter, "SK hynix" or "Defendant"), and hereby alleges as follows:

**THE PARTIES**

1.      MonolithIC 3D is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 825 Watter's Creek Boulevard, Building M, Suite 250, Allen, Texas 75013.

2.      On information and belief, SK hynix is a corporation operating under the laws of the Republic of Korea ("Korea"), with its principal place of business located at 2091 Gyeongchung-daero, Bubal-eup, Icheon, Gyeonggi-do, Korea and may be served pursuant to the provisions of the Hague Convention. SK hynix does business in Texas, directly or through intermediaries, and maintains its principal place of business in Korea.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant comprises a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.

6.      Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. Upon information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

7.      SK hynix directly, through its subsidiaries and agents, and through its direct and indirect customers, purposefully and voluntarily places infringing semiconductor memory

2

modules in the stream of commerce while knowing, expecting, and intending them to be sold, purchased and used by consumers in the United States, Texas, and this District.

8.    For example, SK hynix advertises and offers to sell the Accused Products globally, including throughout Texas and this District, on its websites at https://www.skhynix.com/ and https://product.skhynix.com/. SK hynix distributes "sales kits" and catalogs through its websites, identifying products available for overseas customers to purchase.[1] SK hynix further advertises its overseas locations, stating that "[w]e are securing our place as the leader of the global IT ecosystem of the world."



2

---

[1] https://product.skhynix.com/support/downloads/kits.go
[2] https://www.skhynix.com/company/UI-FR-CP06/

3

9.	SK hynix advertises its operations in Texas. SK hynix's website lists two "sales office[s]" in Texas: one located at 4201 West Parmer Lane Bldg. B, Suite 245, Austin, Texas 78727, and the second located at 20333 Tomball Parkway, Suite 320, Houston, Texas 77070.[3]

10.	Upon information and belief, SK hynix's personnel travel to and/or work out of its Texas offices, and direct and control activities of SK hynix's subsidiaries and employees, or agents thereof in marketing and selling the Accused Products to United States customers.

11.	SK hynix's business includes the manufacture and sale of semiconductor devices, including flash memory ("NAND"), dynamic random access memory ("DRAM"), and CMOS image sensors ("CIS"). As of 2023, NAND flash memory products accounted for 29% of SK hynix's sales, with DRAM products accounting for another 68% of sales.[4]

12.	SK hynix's customers further make, import, ship, distribute, offer for sale, sell, use, and advertise (including offering products and services through websites), SK hynix's infringing semiconductor memory modules (or products incorporating those infringing semiconductor memory modules) in the United States, Texas, and this District.

13.	SK hynix also provides support for users and customers of its infringing semiconductor products in the United States, Texas, and this District. For example, SK hynix provides installation, technical, and other support for its products through its website. The website provides an interface for customers, including those in this District, to communicate with SK hynix for additional support. SK hynix also offers online firmware updates and other downloads for its semiconductor memory modules in the United States, Texas, and this District.

---

[3] https://www.skhynix.com/company/UI-FR-CP06/
[4] https://news.skhynix.com/corporate/fact-sheet/

14. SK hynix also sells infringing semiconductor memory modules to third-party business customers which, in turn, incorporate the infringing semiconductor memory modules into consumer electronics, including smart phones, servers, computers, tablets, automobiles, graphics cards, and more. SK hynix actively encourages and supports its customers' efforts to use, sell, offer to sell, and import the infringing semiconductor memory modules after they have been incorporated into consumer electronics.

15. For example, SK hynix actively promotes and attempts to sell its products in the United States, including through attendance at major events like HPE Discover 2024, Hewlett Packard Enterprise's ("HPE") technology conference, which was held in Las Vegas, Nevada from June 17–20, 2024.[5]

16. On information and belief, and by way of example, one of SK hynix's customers in the United States is Dell Technologies, Inc., which is based in Texas. Dell, a major technology company, reported annual revenue of over $88 billion in fiscal year 2024. Dell has substantial operations and physical places of business throughout Texas.

17. Dell uses a wide variety of SK hynix's non-volatile memory products, including its flash memory products, which are incorporated into Dell's own electronics.[6]

---

[5] SK hynix Showcases Power of Its Groundbreaking AI Memory Solutions at HPE Discover 2024, available at https://news.skhynix.com/hpe-discover-24-sk-hynix-shows-leading-ai-memory-solutions.
[6] Comprehensive Guide to Find Hynix and Micron Drives in the Windows Server Catalog, available at https://www.dell.com/support/kbdoc/en-us/000217333/finding-hynix-drive-in-windows-server-catalog.



18.    Upon information and belief, SK hynix sells infringing semiconductor memory modules to Dell, which Dell uses in building its own consumer products. SK hynix then provides ongoing support to Dell, so that Dell can sell its products and its customers can use these products within the United States, Texas, and this District.

19.    Upon information and belief, as a further example, SK hynix further sells the Accused Products to Nvidia Corporation in the United States. For example, NVIDIA uses SK hynix's high-bandwidth DRAM chips in its artificial intelligence processors and Grace CPU Superchip.

20.    Upon information and belief, SK hynix further sells the Accused Products to Advanced Micro Devices, Inc. ("AMD") in the United States. AMD has substantial operations and

physical places of business in Texas, including five offices in Austin, Houston, and Dallas. AMD uses SK hynix's memory modules in a variety of its products, including its graphics cards.

21.    Upon information and belief, additional United States customers for SK hynix's infringing semiconductor memory modules include Lenovo, Tesla, Inc., Intel, Qualcomm, HPE, and others.

22.    Through its direct and indirect customers, SK hynix has purposefully and voluntarily placed, and contributed to placing, infringing products into the stream of commerce, all the while knowing, expecting, and intending them to be sold, purchased, and used in the United States, including Texas (the second most populous state in the United States) and this District.

23.    SK hynix also directly and/or through its agents and subsidiaries offers to sell, sells, imports, and/or advertises its infringing semiconductor memory modules throughout the United States, Texas, and this District.

24.    Upon information and belief, SK hynix has derived, and continues to derive, substantial revenue from its infringing acts in Texas and this District, including from the sale and use of infringing semiconductor memory modules.

25.    SK hynix therefore knows, expects, intends, and desires that its infringing semiconductor products, and electronics containing its infringing semiconductor products, will be sold in the United States, Texas, and this District.

26.    SK hynix has committed acts, and continues to commit acts, within Texas and this District giving rise to this action. SK hynix has established sufficient minimum contacts with the State of Texas, such that the Court's exercise of jurisdiction over this matter would not offend traditional notions of fair play and substantial justice.

## FACTUAL BACKGROUND

27.    On February 24, 2026, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,564,006 (the "'006 Patent") entitled "3D Semiconductor Device and Structure with Memory Cells and Multiple Metal Layers." A true and correct copy of the '006 Patent is available for download at: https://www.uspto.gov/patents/search/patent-public-search.

28.    On November 4, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,464,734 (the "'734 Patent") entitled "Method for Producing 3D Semiconductor Devices and Structures with Transistors and Memory Cells." A true and correct copy of the '734 Patent is available for download at: https://www.uspto.gov/patents/search/patent-public-search.

29.    On July 15, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,362,330 (the "'330 Patent") entitled "3D Semiconductor Device and Structure with Connection Paths." A true and correct copy of the '330 Patent is available for download at: https://www.uspto.gov/patents/search/patent-public-search.

30.    On March 11, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,250,830 (the "'830 Patent") entitled "3D Semiconductor Memory Devices and Structures." A true and correct copy of the '830 Patent is available for download at: https://www.uspto.gov/patents/search/patent-public-search.

31.    On August 26, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,400,961 (the "'961 Patent") entitled "3D Semiconductor Device and Structure with Metal Layers." A true and correct copy of the '961 Patent is available for download at: https://www.uspto.gov/patents/search/patent-public-search.

32.    MonolithIC 3D is the sole and exclusive owner of all right, title, and interest to and in the '006 Patent, the '734 Patent, the '330 Patent, the '830 Patent, and the '961 Patent (collectively the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. MonolithIC 3D also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit, and to seek injunctive relief as appropriate under the law.

33.    MonolithIC 3D is an innovator in computer memory, logic, and electro-optics. MonolithIC 3D was originally founded and incorporated in 2009 under the name NuPGA by Zvi Or-Bach, the President and CEO of MonolithIC 3D. NuPGA's mission was to develop programmable logic technology with density, speed, and power approaching application-specific integrated circuits ("ASICs"). While developing improved field-programmable gate array ("FPGA") technology, the NuPGA team discovered a path for practical monolithic 3D integrated circuits ("IC"). Recognizing that this breakthrough and its many related innovations represented a paradigm shift for the entire semiconductor industry, Mr. Or-Bach changed the company strategy to focus on monolithic 3D-ICs and renamed the company to MonolithIC 3D$^{TM}$ Inc.

34.    MonolithIC 3D has more than 300 U.S. patents related to multi-level IC technology, including over 90 U.S. patents related to 3D NAND flash memory technology and over 30 patents related to high bandwidth memory (HBM) technology.

35.    The Patents-in-Suit generally relate to semiconductor memory devices and fabrication methods. The technology of the Patents-in-Suit was variously developed by Zvi Or-Bach, Deepak C. Sekar, Jin-Woo Han, and Brian Cronquist of Monolithic 3D. Some embodiments of the invention provide 3D stacked NAND integrated circuits and high bandwidth memory

integrated circuits. SK hynix uses this technology, for example, in its implementation of NAND memory, and high bandwidth memory of the Accused Products.

36.    SK hynix has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell and/or importing products comprising 3D memory (the "Accused Products"). For example, the Accused Products comprise SK hynix's high bandwidth memory series including at least all HBM3, HBM3E (*e.g.* H5UG series), and HBM2E (*e.g.* H5WR series) (the "HBM Accused Products"). The Accused Products also include, by way of example, all SK hynix's SSD products comprising 3D NAND, such as all PEB000 series, PS1000 series, PE9000 series, PE8000 Series, PE6000 Series, SE5000 Series, PCB01/PVC10 series, PC801/BC901 series, PC/BC711 series products; UE400, UD310/220, and UD310A/210A UFS products; and all eMMC 5.1 series eMMC products (the "3D NAND Accused Products").

37.    SK hynix has had knowledge and notice of the Asserted Patents and its infringement thereof, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

## COUNT I
### (Infringement of the '006 Patent)

38.    Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '006 Patent.

40.    SK hynix has and continues to directly infringe the '006 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each

and every limitation of one or more claims of the '006 Patent. These products include at least the 3D NAND Accused Products and the HBM Accused Products, such as H5UG7HMD83X020R HBM3 high bandwidth memory.



[7] https://product.skhynix.com/products/dram/hbm/hbm3e.go

41.    For example, SK hynix has and continues to directly infringe at least Claim 1 of the '006 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer, said first level comprising first transistors, wherein each of said first transistors comprises a single crystal channel; a first metal layer, said first metal layer is disposed above or below said first level; a second metal layer overlaying said first metal layer; a second level comprising a plurality of second transistors, said second level overlaying said first level; a third level comprising a plurality of third transistors, said third level overlaying said second level; a fourth level comprising a plurality of fourth transistors, said fourth level overlaying said third level, wherein said second level comprises a plurality of first memory cells, wherein each of said plurality of first memory cells comprises at least one of said second transistors, wherein said fourth level comprises a plurality of second memory cells, wherein each of said plurality of second memory cells comprises at least one of said fourth transistors, wherein said first level comprises memory control circuits, wherein second memory cells comprise at least four memory arrays, wherein each of said four memory arrays are independently controlled, wherein said first level, said second level, said third level, and said fourth level each comprise a dielectric electrical isolation layer disposed in-between and comprise vias and/or thru-layer vias for vertical connection, and wherein at least one of said second transistors comprises a metal gate.

42.    Each Accused Product comprises a 3D semiconductor device, the device comprising a first level comprising a first single crystal layer, said first level comprising first transistors, wherein each of said first transistors comprises a single crystal channel. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.





43.    Each Accused Product comprises a first metal layer, said first metal layer is disposed above or below said first level; and a second metal layer overlaying said first metal layer. The diagram below demonstrates these elements in the H5UG7HMD83X020R.



44.     Each Accused Product comprises a second level comprising a plurality of second transistors, said second level overlaying said first level. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.





45.    Each Accused Product comprises a third level comprising a plurality of third transistors, said third level overlaying said second level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



46.    Each Accused Product comprises a fourth level comprising a plurality of fourth transistors, said fourth level overlaying said third level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



47.    Each Accused Product comprises a device wherein said second level comprises a plurality of first memory cells, wherein each of said plurality of first memory cells comprises at least one of said second transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



48.     Each Accused Product comprises a device wherein said fourth level comprises a plurality of second memory cells, and wherein each of said plurality of second memory cells comprises at least one of said fourth transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



49.     Each Accused Product comprises a device wherein said first level comprises memory control circuits. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



**said first level**

**memory control circuits**

Part of HBM Logic Die
(Delayered, Optical)

HBM Logic Die CMOS Control Circuit
(Delayered, SEM)

Data flow to the entire HBM DRAM stack flows through the **HBM logic die**. Therefore, **the memory control circuits** on **the HBM logic die control memory addressing and data flow to the memory cells**.

50.     Each Accused Product comprises a device wherein second memory cells comprise at least four memory arrays, and wherein each of said four memory arrays are independently controlled. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



High Bandwidth Memory (HBM3) DRAM, JESD238B.01 (Revision of JESD238B, March 2025), JEDEC SOLID STATE TECHNOLOGY ASSOCIATION

51.     Each Accused Product comprises a device wherein said first level, said second level, said third level, and said fourth level each comprise a dielectric electrical isolation layer disposed in-between and comprise vias and/or thru-layer vias for vertical connection. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



HBM Cross-section
(Exemplary TSV Stacking, Optical)

Detail of Upper Portion of TSV
(SEM)



52.     Each Accused Product comprises a device wherein at least one of said second transistors comprises a metal gate. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



53. SK hynix indirectly infringes one or more claims of the '006 Patent by knowingly and intentionally inducing others, including SK hynix's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the H5UG7HMD83X020R.

54. SK hynix indirectly infringes one or more claims of the '006 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '006 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '006 Patent. SK hynix performs these affirmative acts with knowledge of the '006 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '006 Patent.

55. SK hynix indirectly infringes one or more claims of the '006 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others'

use and manufacture of the Accused Products, such that the '006 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '006 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '006 Patent. SK hynix performs these affirmative acts with knowledge of the '006 Patent and with intent, or willful blindness, that it causes the direct infringement of the '006 Patent.

56.     SK hynix has willfully infringed, and continues to willfully infringe, the '006 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '006 Patent, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

57.     MonolithIC 3D has suffered damages as a result of SK hynix's direct and indirect infringement and willful infringement of the '006 Patent in an amount to be proved at trial.

58.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of SK hynix's infringement of the '006 Patent, for which there is no adequate remedy at law, unless SK hynix's infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '734 Patent)**

59.     Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

60.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '734 Patent.

25

61.    SK hynix has and continues to directly infringe the '734 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271(g), by importing into the United States, offering to sell, selling, or using with the United States, products that satisfy each and every limitation of one or more claims of the '734 Patent. These products include at least the 3D NAND Accused Products, such as the SK hynix Platinum P51 SSD ("P51").











3D NAND Die Photograph
(after removal from chip encapsulation)

62.    For example, SK hynix has and continues to directly infringe at least Claim 15 of the '734 Patent under 35 U.S.C. § 271(g) by making, using, offering to sell, selling, and/or importing into the United States, products made by a method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming memory control circuits in and/or on said first level, wherein said memory control circuits comprise first single crystal transistors, and wherein said memory control circuits comprise at least two interconnection metal layers; forming at least one second level disposed above or below said memory control circuits; performing a first etch step into said at least one second level; forming at least one third level disposed on top of said second level; performing additional processing steps to form a plurality of first memory cells within said second level and a plurality of second memory cells within said third level, wherein each of said plurality of first memory cells comprise at least one second transistor, wherein each of said plurality of second memory cells comprise at least one third transistor; forming at least one via, said at least one via

is disposed through said third level and through said second level, and connects to at least one of said at least two interconnection metal layers; and a step of gate replacement of said at least one third transistor.

63.    Each Accused Product is made by method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; and forming memory control circuits in and/or on said first level. For example, the diagram below demonstrates these elements in the P51.



64.     Each Accused Product is made by a method wherein said memory control circuits comprise first single crystal transistors, and wherein said memory control circuits comprise at least two interconnection metal layers, and forming at least one second level disposed above or below said memory control circuits The diagram below demonstrates these elements in the P51.



3D NAND Device Cross-section
(close-up of array to CMOS
interface, SEM)

65.     Each Accused Product is made by a method comprising performing a first etch step into said at least one second level and forming at least one third level disposed on top of said second level. For example, the diagrams below demonstrate these elements in the P51.





66.    Each Accused Product is made by a method comprising performing additional processing steps to form a plurality of first memory cells within said second level and a plurality of second memory cells within said third level. For example, the diagrams below demonstrate these elements in the P51.



3D NAND Device Cross-section
(close-up of Deck 1 bottom, SEM)

3D NAND Device Cross-section
(close-up from top of Deck 2, SEM)

31

67.     Each Accused Product is made by a method wherein each of said plurality of first memory cells comprise at least one second transistor. For example, the diagram below demonstrates this element in the P51.



68.    Each Accused Product is made by a method wherein each of said plurality of second memory cells comprise at least one third transistor. For example, the diagram below demonstrates these elements in the P51.



69.    Each Accused Product is made by a method comprising forming at least one via, said at least one via is disposed through said third level and through said second level, and connects to at least one of said at least two interconnection metal layers. For example, the diagram below demonstrates these elements in the P51.



3D NAND Device Cross-section (Tungsten Vias, SEM)

70.     Each Accused Product is made by a method comprising a step of gate replacement of said at least one third transistor. For example, the diagram below demonstrates this element in the P51.



3D NAND Device Cross-section (close-up of Deck 2, SEM)

71.     The Accused Products are not materially changed by subsequent processes. For example, the P51 SSD is a memory integrated circuit which operates as a unit and is not modified at the chip level following its manufacture.

72.     The Accused Products do not become trivial or nonessential components of another product. For example, the P51 SSD provides flash storage necessary for the operation of computers and other products which incorporate it.

73.     SK hynix has willfully infringed, and continues to willfully infringe, the '734 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, upon

information and belief, SK hynix has known of MonolithIC 3D's patents, including the '734 Patent, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

74.     MonolithIC 3D has suffered damages as a result of SK hynix's direct and indirect infringement and willful infringement of the '734 Patent in an amount to be proved at trial.

75.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of SK hynix's infringement of the '734 Patent, for which there is no adequate remedy at law, unless SK hynix's infringement is enjoined by this Court.

### COUNT III
### (Infringement of the '330 Patent)

76.     Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

77.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '330 Patent.

78.     SK hynix has and continues to directly infringe the '330 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '330 Patent. These products include at least the 3D NAND Accused Products and the HBM Accused Products, such as H5UG7HMD83X020R HBM3 high bandwidth memory.



79.     For example, SK hynix has and continues to directly infringe at least Claim 8 of the

'330 Patent by making, using, offering to sell, selling, and/or importing into the United States

---

[8] https://product.skhynix.com/products/dram/hbm/hbm3e.go

products that comprise a 3D semiconductor device, the device comprising: a first level, wherein said first level comprises a first layer, said first layer comprising first transistors, and wherein said first level comprises a second layer, said second layer comprising first interconnections; a second level overlaying said first level, wherein said second level comprises a plurality of second transistors, wherein said second level comprises a third layer, said third layer comprising first conductive lines; a third level overlaying said second level, wherein said third level comprises a plurality of third transistors, wherein said third level comprises a fourth layer, said fourth layer comprising second conductive lines; and a plurality of connection paths, wherein said plurality of connection paths provides electrical connections from a plurality of said first transistors to said plurality of third transistors, and wherein said first level comprises at least one PLL circuit.

80.     Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level, wherein said first level comprises a first layer, said first layer comprising first transistors, and wherein said first level comprises a second layer, said second layer comprising first interconnections. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



HBM Logic Die Cross-section
(SEM)

39

81.     Each Accused Product comprises a second level overlaying said first level, wherein said second level comprises a plurality of second transistors, wherein said second level comprises a third layer, said third layer comprising first conductive lines. The diagrams below demonstrate these elements in the H5UG7HMD83X020R.



82.    Each Accused Product comprises a third level overlaying said second level, wherein said third level comprises a plurality of third transistors, wherein said third level comprises a fourth layer, said fourth layer comprising second conductive lines. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



83.    Each Accused Product comprises a plurality of connection paths, wherein said plurality of connection paths provides electrical connections from a plurality of said first transistors to said plurality of third transistors. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



84.     Each Accused Product comprises a device wherein said first level comprises at least one PLL circuit. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



Figure 10 — High Level Block Diagram Example of Clocking Scheme

For at least the HBM3 requirements for signal integrity and clocking, the SK Hynix **HBM controller** will employ **PLL circuits**.

High Bandwidth Memory (HBM3) DRAM , JESD238B.01 (Revision of JESD238B, March 2025) April 2025,JEDEC SOLID STATE TECHNOLOGY ASSOCIATION

85.     SK hynix indirectly infringes one or more claims of the '330 Patent by knowingly and intentionally inducing others, including SK hynix's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the H5UG7HMD83X020R.

86.     SK hynix indirectly infringes one or more claims of the '330 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and

end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '330 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '330 Patent. SK hynix performs these affirmative acts with knowledge of the '330 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '330 Patent.

87.     SK hynix indirectly infringes one or more claims of the '330 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '330 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '330 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '330 Patent. SK hynix performs these affirmative acts with knowledge of the '330 Patent and with intent, or willful blindness, that it causes the direct infringement of the '330 Patent.

88.     SK hynix has willfully infringed, and continues to willfully infringe, the '330 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while

knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '330 Patent, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

89.     MonolithIC 3D has suffered damages as a result of SK hynix's direct and indirect infringement and willful infringement of the '330 Patent in an amount to be proved at trial.

90.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of SK hynix's infringement of the '330 Patent, for which there is no adequate remedy at law, unless SK hynix's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '830 Patent)

91.     Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

92.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '830 Patent.

93.     SK hynix has and continues to directly infringe the '830 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '830 Patent. These products include at least the HBM Accused Products, such as H5UG7HMD83X020R HBM3 high bandwidth memory.

45





PRODUCTS ▶ DRAM ▶ HBM ▶ **HBM3E**                                                    ✕

**Parts Detail**

HBM HBM3

# H5UG7HMD83X020R

| | |
|---|---|
| **Density** | 16Gb |
| **KGSD Density** | 128Gb |
| **Speed** | 5.6Gbps |
| **Organization** | x1024 |
| **Voltage (VDD / VDDQ)** | 1.1V / 1.1V |

---

[9] https://product.skhynix.com/products/dram/hbm/hbm3e.go

94.    For example, SK hynix has and continues to directly infringe at least Claim 4 of the '830 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer and a memory control circuit, said memory control circuit comprising a plurality of first transistors; a first metal layer overlaying said first single crystal layer; a second metal layer overlaying said first metal layer; a plurality of second transistors disposed atop said second metal layer; a third metal layer disposed atop said plurality of second transistors; a memory array comprising word-lines and memory cells, wherein said memory array comprises at least four memory mini arrays, wherein at least one of said plurality of second transistors comprises a metal gate, wherein each of said memory cells comprises at least one of said plurality of second transistors, and wherein said memory control circuit comprises at least one Look Up Table circuit ("LUT"); and an upper level disposed atop said third metal layer, wherein said upper level comprises a mono-crystalline silicon layer.

95.    Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer and a memory control circuit, said memory control circuit comprising a plurality of first transistors. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



HBM Stack Cross-section (Optical)



HBM Logic Die Cross-section
(SEM)



HBM Logic Die CMOS Control Circuit
(Delayered, SEM)

Part of HBM Logic Die
(Delayered, Optical)

96.    Each Accused Product comprises a first metal layer overlaying said first single crystal layer; a second metal layer overlaying said first metal layer; a plurality of second transistors disposed atop said second metal layer. The diagrams below demonstrate these elements in the H5UG7HMD83X020R.





97.     Each Accused Product comprises a third metal layer disposed atop said plurality of second transistors. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



98.    Each Accused Product comprises a memory array comprising word-lines and memory cells. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



99.    Each Accused Product comprises a device wherein said memory array comprises at least four memory mini arrays. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



100.    Each Accused Product comprises a device wherein at least one of said plurality of second transistors comprises a metal gate. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

101.    Each Accused Product comprises a device wherein each of said memory cells comprises at least one of said plurality of second transistors. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

102.    Each Accused Product comprises a device wherein said memory control circuit comprises at least one Look Up Table circuit ("LUT"). For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



To comply with the JEDEC HBM specifications, the SK Hynix HBM **memory control circuit includes at least the LUT circuits for interconnect redundancy mapping.**

**said memory control circuit**

JEDEC Standard No. 238B.01
Page 95

**6.7   Interconnect Redundancy Remapping**

The HBM3 DRAM supports interconnect lane remapping to help improve SIP assembly yield and recover functionality of the HBM3 stack. The SOFT_LANE_REPAIR and HARD_LANE_REPAIR instructions are used to perform lane remapping. Lane remapping is independent for each channel.

SOFT_LANE_REPAIR and HARD_LANE_REPAIR instructions can only be issued as part of the device initialization and before normal memory operation has commenced, e.g., before the CK clock has started to toggle.

The HBM DRAM can be programmed to retain the remapped lane information even when power is completely removed from the HBM stack.

Part of HBM Logic Die
(Delayered, Optical)

High Bandwidth Memory (HBM3) DRAM , JESD238B.01
(Revision of JESD238B, March 2025) April 2025,JEDEC SOLID
STATE TECHNOLOGY ASSOCIATION

56

103.    Each Accused Product comprises an upper level disposed atop said third metal layer, wherein said upper level comprises a mono-crystalline silicon layer. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



104.    SK hynix indirectly infringes one or more claims of the '830 Patent by knowingly and intentionally inducing others, including SK hynix's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the H5UG7HMD83X020R.

105.    SK hynix indirectly infringes one or more claims of the '830 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '830 Patent. SK hynix induces this direct infringement through its

affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '830 Patent. SK hynix performs these affirmative acts with knowledge of the '830 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '830 Patent.

106.    SK hynix indirectly infringes one or more claims of the '830 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '830 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '830 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '830 Patent. SK hynix performs these affirmative acts with knowledge of the '830 Patent and with intent, or willful blindness, that it causes the direct infringement of the '830 Patent.

107.    SK hynix has willfully infringed, and continues to willfully infringe, the '830 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '830

Patent, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

108.    MonolithIC 3D has suffered damages as a result of SK hynix's direct and indirect infringement and willful infringement of the '830 Patent in an amount to be proved at trial.

109.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of SK hynix's infringement of the '830 Patent, for which there is no adequate remedy at law, unless SK hynix's infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '961 Patent)

110.    Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

111.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '961 Patent.

112.    SK hynix has and continues to directly infringe the '961 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '961 Patent. These products include at least the 3D NAND Accused Products and the HBM Accused Products, such as H5UG7HMD83X020R HBM3 high bandwidth memory.







Density | 16Gb

Parts Detail

HBM HBM3

## H5UG7HMD83X020R

| | |
|---|---|
| Density | 16Gb |
| KGSD Density | 128Gb |
| Speed | 5.6Gbps |
| Organization | x1024 |
| Voltage (VDD / VDDQ) | 1.1V / 1.1V |

[10]

---

[10] https://product.skhynix.com/products/dram/hbm/hbm3e.go

113.    For example, SK hynix has and continues to directly infringe at least Claim 1 of the '961 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising: a first silicon layer comprising a first single crystal silicon layer; a plurality of first transistors each comprising a single-crystal channel; a first metal layer connected to said plurality of first transistors; a second metal layer connected to said first metal layer; a third metal layer connected to said second metal layer; a second level comprising a plurality of second transistors, said second level is disposed over said first level; a third level comprising a plurality of third transistors, said third level is disposed over said second level; a fourth metal layer disposed over said third level; a fifth metal layer disposed over said fourth metal layer; and a via disposed through said second level, wherein at least one of said plurality of second transistors comprises a metal gate, wherein said device comprises at least one temperature sensor, and wherein at least one element within at least one of said plurality of second transistors has been processed independently of said plurality of third transistors.

114.    Each Accused Product comprises a 3D semiconductor device, the device comprising a first level comprising: a first silicon layer comprising a first single crystal silicon layer and a plurality of first transistors each comprising a single-crystal channel. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



115.    Each Accused Product comprises a first metal layer connected to said plurality of first transistors; a second metal layer connected to said first metal layer; and a third metal layer connected to said second metal layer. The diagram below demonstrates these elements in the H5UG7HMD83X020R.



116.    Each Accused Product comprises a second level comprising a plurality of second transistors, said second level is disposed over said first level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



117.    Each Accused Product comprises a third level comprising a plurality of third transistors, said third level is disposed over said second level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



118.     Each Accused Product comprises a fourth metal layer disposed over said third level; and a fifth metal layer disposed over said fourth metal layer. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



119.     Each Accused Product comprises a via disposed through said second level. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



120.    Each Accused Product comprises a device wherein at least one of said plurality of second transistors comprises a metal gate. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

121.    Each Accused Product comprises a device wherein said device comprises at least one temperature sensor. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



122.    Each Accused Product comprises a device wherein at least one element within at least one of said plurality of second transistors has been processed independently of said plurality of third transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



123.    SK hynix indirectly infringes one or more claims of the '961 Patent by knowingly and intentionally inducing others, including SK hynix's customers and end-users of the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the H5UG7HMD83X020R.

124.    SK hynix indirectly infringes one or more claims of the '961 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-

users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '961 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '961 Patent. SK hynix performs these affirmative acts with knowledge of the '961 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '961 Patent.

125.    SK hynix indirectly infringes one or more claims of the '961 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '961 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '961 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '961 Patent. SK hynix performs these affirmative acts with knowledge of the '961 Patent and with intent, or willful blindness, that it causes the direct infringement of the '961 Patent.

126.     SK hynix has willfully infringed, and continues to willfully infringe, the '961 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '961 Patent, at least as of the filing of MonolithIC 3D's first complaints against SK hynix on November 26, 2025, asserting patents in the same portfolio as the Patents-in-Suit, but certainly as of the filing date of this Complaint.

127.     MonolithIC 3D has suffered damages as a result of SK hynix's direct and indirect infringement and willful infringement of the '961 Patent in an amount to be proved at trial.

128.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of SK hynix's infringement of the '961 Patent, for which there is no adequate remedy at law, unless SK hynix's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MonolithIC 3D prays for relief against SK hynix as follows:

a.     Entry of judgment declaring that SK hynix has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.     Entry of judgment declaring that SK hynix's infringement of the Patents-in-Suit is willful;

c.     Entry of a preliminary injunction enjoining SK hynix from making, using, importing, offering to sell, and/or selling the Accused Products;

72

d.      Entry of a permanent injunction enjoining SK hynix from making, using, importing, offering to sell, and/or selling the Accused Products;

e.      An order awarding damages sufficient to compensate MonolithIC 3D for SK hynix's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

f.      Entry of judgment declaring that this case is exceptional and awarding MonolithIC 3D its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

g.      An accounting for acts of infringement;

h.      Such other equitable relief which may be requested and to which MonolithIC 3D is entitled; and

i.      Such other and further relief as the Court deems just and proper.

Dated: May 11, 2026

Respectfully submitted,

*/s/ Peter Lambrianakos*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

**ATTORNEYS FOR PLAINTIFF
MONOLITHIC 3DTM INC.**